UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Dloyd C. Mitchell

     and Tiffany D. Mitchell,                Case No. 19-20109-beh

               Debtors.                   Chapter 13

## ORDER ON DEBTORS' ATTORNEYS' APPLICATION FOR COMPENSATION

Debtors' counsel filed an interim application for compensation for the firm's work over four years in this Chapter 13 case, in the amount of $10,999.31, including 10,463.00 in fees and $536.31 in costs. ECF No. 192. Debtors Dloyd and Tiffany Mitchell objected to a portion of the fees sought. ECF No. 194.

The Court held a preliminary hearing on debtors' objection on March 7, 2023, and an evidentiary hearing on April 4, 2023. After considering the case docket, the itemization of service set out in the application, and the testimony and argument at the hearing, the Court concludes that the law firm's services reasonably benefitted the debtors and warrant only a minor reduction. As more fully explained below, the Court awards a total administrative fee of $10,622.81. Of that amount, counsel already has received $5,100.00 through the debtors' plan, so the Court will authorize the Chapter 13 trustee to pay the remaining $5,522.81 to the law firm, through the balance of the plan payments.

## BACKGROUND FACTS

The docket reflects a fair amount of activity in the Mitchells' Chapter 13 case over the four years covered by their counsel's interim fee application. On

January 4, 2019, the debtors filed their petition and schedules. ECF No. 1. They also filed their plan proposing to pay $815 monthly. ECF No. 2.

Early on, counsel assisted the debtors in filing an adversary case against creditor City of Milwaukee, asserting a fraudulent transfer. CM-ECF No. 10, No. 19-2007. One week after the first pre-trial conference, the parties submitted a stipulation and proposed order to resolve the adversary proceeding. ECF No. 6,7.

Debtors' counsel filed a number of items to support their schedules and plan(s). *See* ECF Nos. 11, 36, 37, 38, 40, 41, 92, 110, 159. Debtors filed two objections to proofs of claims, although ultimately each was withdrawn. *See* ECF Nos. 42, 46.

Various creditors filed a total of six motions for relief from stay (or affidavits of default based on such motions) between February 21, 2019 and October 4, 2021. *See* ECF Nos. 23, 62, 83, 132, 144, 160, 171, 188.

Debtors not only responded to motions from creditors or the Chapter 13 trustee but filed some of their own requests for relief. *See* ECF No. 44, 80, 86. Debtors also had to respond to three objections to confirmation of their plan (and amended plans). *See* ECF Nos. 24, 25, 104.

Due in part to the above objections and resolution of creditor motions, the debtors amended their plan three times between April 19, 2019 and October 31, 2019. *See* ECF No. 39, 95, 101, 114. Their plan was confirmed on March 16, 2020. ECF No. 126. Debtors filed two additional modified plans: ECF Nos. 142 and 166.

The Chapter 13 trustee filed two motions to dismiss the debtors' case, based on failure to make payments. ECF Nos. 73 and 180.

A number of the motions and objections described above required debtors' counsel to appear at court hearings. *See* notation of eight hearings held July 23, 2019, October 1, 2019, January 7, 2020, January 28, 2020, February 11, 2020, February 18, 2020, August 4, 2020, February 22, 2022.

On February 15, 2023, the debtors objected to their counsel's interim fee request. ECF No. 194. In their letter-objection, debtors state:

> "Honestly, this is news too us. Kelly was our active attorney. Kelly no longer works at Watton. … Once Kelly was no longer there, things were different. … Everyone else at Watton picked up the pieces to my complicated case. … Kelly always said my case was unusual based on the rental properties and being self-employed. …"

The letter also describes some challenging personal circumstances debtors have faced since initiating their case, including changing employment, a death in the extended family, and moving out of state. The letter describes some frustration with the family's current financial circumstances and expresses a desire to finish the Chapter 13 case. ECF No. 194. It concludes: "I was not being made aware not one time I was being billed any additional fees. Now one day out of nowhere I'm being told $10,000 is owed." *Id.*

At the evidentiary hearing, Mr. Mitchell supplied the bulk of the testimony on behalf of debtors. He began by noting his and his wife's appreciation for the work done by the Watton firm. He agreed that some of his initial surprise or frustration upon receipt of the interim fee application is that it mentioned a total of over $10,000. He also conceded that on first read, he did not appreciate that approximately half of that total already had been paid through debtors' Chapter 13 plan. *See* ECF No. 2, sec. 7.2; ECF No. 114. Mr. Mitchell agreed that he was told in the beginning how much his case would cost. He stated, without specifics, that communications with the firm have been different since Atty. Klawonn left.

Attorney Kirk Fedewa presented the law firm's view. He noted that there has been no dispute about any aspect of the work performed on behalf of the debtors and urged the Court to deem the fees reasonable. He described his firm's practice of explaining to clients at the outset that $4,500 is the normal fee but work thereafter is billed by the hour. The application notes that those fees are billed at $375/hour for Attys. Watton and Maloney, $345/hour for Atty. Hassell, $290/hour for associates and $150/hour for paralegal time. ECF No. 192, at 1. The application also acknowledged that $5,100.00 already had

been paid through the plan, leaving a current balance of $5,899.21. *Id.* Attorney Fedewa stated that even though Atty. Klawonn left the firm after performing a significant amount of work on the Mitchells' case, Atty. Hassell also had been involved from the beginning. The fee application reflects this. *See* ECF No. 192, at 7, 8, 14, 21-23, 25. Attorney Fedewa began work on debtors' case in February 2022. ECF No. 192, at 23. Attorney Fedewa suggested that Atty. Hassell's involvement throughout should reduce any suggestion that the debtors were charged for a 'learning curve' of a new lawyer once Atty. Klawonn changed employment.

## DISCUSSION

The Court has jurisdiction to decide the issue before it. Applications for compensation and reimbursement of expenses under 11 U.S.C. § 330 are core proceedings insofar as they concern the administration of the estate and are proceedings for the allowance of claims against the estate. 28 U.S.C. § 157(b)(2)(A)-(B).

The Code authorizes reasonable compensation for actual, necessary services rendered by an attorney or paraprofessional. 11 U.S.C. § 330(a)(1)(A). That section includes compensation of non-lawyers because their work can reduce the cost of administering a bankruptcy case. If such work is reasonable and necessary, it is compensable. Conversely, clerical tasks, whether performed by a lawyer or staffer, are charged to overhead and are not separately compensable. *In re Nelson,* No. 16-22089, 2017 WL 449581, at *2 (Bankr. E.D. Wis. Feb. 1, 2017) (citations omitted). Local Rule 2016 also informs the review. It describes the relevant information required for a fee application, including Rule 2016(a)(2), a "chronological record of each timekeeper's time spent on the case that (A) states the time spent on each service or task in tenths of an hour; . . . ."

In Chapter 13 cases, the Court allows compensation based on a consideration of the benefit and necessity of such services to the debtor. 11 U.S.C. § 330(a)(4)(B). When counsel files an application for fees, the burden of proving that the actual fee is reasonable is on the lawyer or law firm requesting

the fee. The Court has an independent duty to review each fee application, whether or not a party has objected to a portion of the fee. 11 U.S.C. § 329(b). It is a fact-specific inquiry, and the determination of compensability is within the sound discretion of the court. *In re Geraci,* 138 F.3d 314, 318–19 (7th Cir. 1998).

The Court therefore examines first the specific bases of the Mitchells' objection, and then conducts its own review of the fee application to determine whether the amount sought is reasonable in the circumstances.

**1.   Debtors' objections to the fee application.**

Mr. and Mrs. Mitchell felt communication with the law firm changed after Atty. Klawonn left. They did not specify in what manner communication changed. They also generally object to the total bill amount, although they do not dispute any individual items of service. It seems that they have trouble getting over "sticker shock" despite later realizing that approximately half of the interim total sought by counsel already has been paid. The remainder, if approved, would likewise be paid through the Mitchells' plan. The Mitchells have undergone some significant life changes since they filed their case—they changed employment, moved out of state, and have not been able to purchase a home in their new state. Mr. Mitchell testified that selling some of their real estate holdings has helped them pay increased household expenses and remain in their Chapter 13 plan. But, at least on a personal level, he would prefer that the case end as soon as possible, and appears to view counsel fees as an added hurdle preventing early exit from Chapter 13.

**a. Communication issues and multiple lawyers.**

The Mitchells make a generalized issue that communication changed after Atty. Klawonn no longer worked on their case. Based on the itemized bill, it appears Atty. Klawonn worked on the Mitchells' case until at least September 2020. *See* ECF No. 192, at 20. There was little activity in debtors' case then until June 2021, when Atty. Hassell dealt with matters concerning the Department of Workforce Development and the sale of debtors' home. Those

efforts extended at least until October 2021, and the itemization reflects multiple phone calls and emails to client(s) about these matters. *Id.* at 21-22.

Mr. Mitchell expressed frustration with the substitution of different counsel at the law firm in the period during which he had to get his amended plan on file. But debtors' amended plan was confirmed on March 16, 2020, while Atty. Klawonn still assisted them. Debtor may be referring to later efforts to modify the Mitchells' chapter 13 plan. A first proposed modification was filed on September 4, 2020, during Atty. Klawonn's tenure. ECF No. 142. A second proposed modified plan was filed on October 22, 2021, shortly after Atty. Hassell spoke with counsel for the Chapter 13 trustee about case administration. *See* ECF No. 166; *see also* No. 192, at 22-23. The record shows calls with the clients at the same time.

Attorney Fedewa provided services to the Mitchells beginning in February 2022. ECF No. 192, at 23. From that point forward the fee application reflects 23 entries of calls and emails to the debtors from either Atty. Fedewa or paralegals at the Watton firm. Some of those entries reflect "multiple calls" or "multiple emails." *Id.* at 23-26. The entries for time spent by Atty. Fedewa do not reflect extensive review of the debtors' case history, but instead reflect discrete services for fresh events, beginning with a renewed motion for relief from stay filed by Wells Fargo Bank. *See* ECF No. 171; *see also* No. 192, at 23, et seq. Also during this time, Atty. Hassell was communicating with the debtors about possible payoff amounts and general case administration. *Id.* at 25. Consequently, there does not appear to have been any re-learning of the Mitchells' case by a second lawyer at the firm due to employment changes. *Compare, In re Retter*, Case No. 11-25888-GLT, 2014 WL 667675, at *5 (Bankr. W.D. Pa. Feb. 20, 2014) (disallowing fees for work spent by "new timekeepers" acquainting themselves with the debtors' case file, because "the Bankruptcy Code prohibits compensation for duplicative services").

When appropriate, the Court has discretion to consider an adjustment to counsel's fee. 11 U.S.C. § 329(b). The determination is within the sound

discretion of the Court. *In re Geraci*, 138 F.3d at 318-19. The Mitchells' case has proven more complicated than a typical Chapter 13, in part because of the number of their real estate holdings at the time they filed their petition. In particular, the length of time from filing of the petition to plan confirmation was likely due to three motions for relief from stay, two objections to confirmation, institution and resolution of an adversary proceeding by debtors, objections to proofs of claim, a motion to dismiss based on lack of payments, and three amended plans. Mr. Mitchell testified that Attorney Klawonn had advised them at the outset that their case could be more complicated (and therefore involve more lawyer activity.) It certainly has been.

In the circumstances, the Court finds that the services rendered to the debtors, as reflected in this interim fee application, are reasonable and of benefit to the debtors. The Court has not identified any duplication of service by lawyers, or any block billing or vague service descriptions. In general, clerical work does not warrant compensation. For example, the act of mailing or filing is a clerical task and is not compensable. *In re Nelson*, 2017 WL 449581, at *3 ("tasks performed by paralegals may be compensated separately only if the tasks are more substantive than clerical work, work this is clerical or secretarial in nature, regardless of who performs it, should be treated as an overhead expense and not separately recoverable."). "Clerical tasks include 'typing, data entry, checking court dockets or court dates, manually assembling, collating, marking, processing, photocopying, and mailing documents. . . . [F]iling/uploading documents to the docket is a clerical task." *Id.* Here, it appears that firm paralegals did most of the e-filing or mailing of documents at no charge. There were, however, several entries where a lawyer provided a particular legal service, such as reviewing or drafting a document, and then included 'efiling' as part of the billing description. Less often, a paralegal included 'efiling' or 'mailing' as part of his or her billing entry. In total, the Court has identified nine instances where Atty. Klawonn included efiling or emailing of documents in her billing entry, one instance of efiling documents by Atty. Hassell, and five instances of efiling by paralegals. As it has

done in the review of other fee applications, the Court will reduce by .10 each entry that included "emailed" or "efiled". That equates to $261 in charges by Atty. Klawonn, $34.50 in charges by Atty. Hassell, and $75.00 in paralegal charges for a total disallowance of $376.50.

## CONCLUSION

The debtors have a complicated case, have achieved confirmation despite multiple motions and objections, and the record reflects many instances of communication between members of the Watton firm and the debtors. Other than a few clerical entries for which the Court will disallow $376.50, the services appear reasonable and have benefitted the clients. The Court could find no evidence of duplication of work due to the departure of one associate who did significant work on the case in the early months.

The original total amount sought in this interim fee application, $10,999.31, will be reduced by $376.50 for clerical tasks. Deducting the $5,100.00 already paid by the debtors through their plan, this leaves an unpaid balance of $5,522.81, to be paid through debtors' plan.

## ORDER

Accordingly, for the foregoing reasons,

IT IS THEREFORE ORDERED that the Court approves and allows compensation for the Watton firm in the total amount of $10,622.81, of which $5,522.81 remains unpaid and is to be paid as an administrative claim through the plan.

Dated: May 9, 2023

By the Court:

_Beth E. Hanan_
Beth E. Hanan
United States Bankruptcy Judge